UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME BORDELON, F23499,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL MINDORO, M.D., et al.,<br><br>Defendant(s). | Case No. 17-cv-05724-CRB (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 28) |

Plaintiff Jerome Bordelon, a state prisoner incarcerated at the Correctional Training Facility (CTF) in Soledad, California, filed a pro se complaint under 42 U.S.C. § 1983 alleging delay/denial of medical treatment. Plaintiff specifically alleges that medical personnel at CTF ignored his complaints of severe chest pains and difficulty breathing for months, "until he suffered a heart attack and almost died." Compl. (ECF No.1) at 4. Plaintiff further alleges that his requests for help through administrative appeals were to no avail despite reviewers "examining [his] grievance and his medical file." Id. at 10. Plaintiff seeks $5,000,000 in damages for deliberate indifference to serious medical needs in violation of the Eighth Amendment.

On January 31, 2018, the Court found that Plaintiff's allegations, liberally construed, appear to state a cognizable claim for damages under § 1983 for deliberate indifference to serious medical needs against the six named defendants – Drs. Michael Mindoro, A. Mulligan-Pfile, Steven Posson, Robert Wlodarczyk and G. Palomero at CTF, and Deputy Director J. Lewis of the California Department of Corrections and Rehabilitation (CDCR) in Sacramento – and ordered the United States Marshal to serve them. Jan. 31, 2018 Order (ECF No. 11) at 2.[1]

---

[1] Plaintiff voluntarily dismissed Dr. Wlodarczyk as a defendant in this action after the marshal was unable to serve him at CTF because he is a private practitioner not employed by CDCR. Opp'n (ECF No. 39) at 1, n.1.

Defendants now move for summary judgment under Federal Rule of Civil Procedure 56 on the ground that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Defendants specifically argue that there is no evidence that: (1) Dr. Mindoro was deliberately indifferent to Plaintiff's serious medical needs in connection with the medical care he provided Plaintiff at CTF; or (2) Dr. Mulligan-Pfile, Dr. Posson, Dr. Palomero or Deputy Director Lewis were deliberately indifferent to Plaintiff's serious medical needs in connection with their review of Plaintiff's administrative grievance. Plaintiff has filed an opposition (ECF No. 39) and Defendants have filed a reply (ECF No. 36).[2][3]

**BACKGROUND**

**A. Medical Treatment**

Plaintiff arrived at CTF in March 2014. Mindoro Decl. (ECF No. 29) ¶ 6. His medical history included asthma, hypertension, depression, a deformed right wrist, and a heart murmur with an enlarged heart valve. Id. He has no family history of heart disease. Id. ¶ 23.

Dr. Michael Mindoro was Plaintiff's primary care physician at CTF. Id. ¶ 3. Dr. Mindoro is board-certified in family medicine. Id. ¶ 2.

Dr. Mindoro first examined Plaintiff on May 7, 2014. Id. ¶ 7. At that time, Plaintiff reported no chest pain, but claimed heart palpitations were limiting his mobility. Id. Dr. Mindoro requested Plaintiff's prior medical records and noted that Plaintiff had a recent normal electrocardiogram (EKG).[4] Id.

---

[2] Plaintiff's opposition and Defendants' reply were both filed on January 8, 2019. Because it appeared that Defendants may not have received all of Plaintiff's documents before filing their reply, the Court requested that they submit a supplemental reply. Jan. 11, 2019 Order (ECF No. 41) at 1. But on January 31, 2019, Defendants informed the Court that their previously filed reply contained their response to Plaintiff's opposition. Not. (ECF No. 43) at 1.

[3] Plaintiff filed a "Request for Production of Documents" several weeks after he filed his opposition (and supporting declaration and documentary evidence) and Defendants filed their reply. See Req. (ECF No. 42). But even if the filing is liberally construed as a request for a continuance to conduct additional discovery under Rule 56(d), the court finds that a continuance is not in order because plaintiff does not make clear "what information is sought and how it would preclude summary judgment." Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).

[4] An EKG is a paper or digital recording of the electrical signals in the heart. It is also called an electrocardiogram or an ECG. An EKG is used to determine heart rate, heart rhythm, and other information regarding the condition of the heart.

2

Dr. Mindoro next saw Plaintiff on March 7, 2015. Id. ¶ 8. Plaintiff reported no chest pain, dizziness, or lightheadedness, but he again said he experienced occasional palpitations when walking. Id. Dr. Mindoro assessed that the palpitations might be related to anxiety. Id.

Dr. Mindoro saw Plaintiff again on February 10, 2016. Id. ¶ 9. Plaintiff complained of continued palpitations under circumstances where he walked more than 75 yards, but he said that they resolved with rest. Id. Dr. Mindoro assessed Plaintiff's condition as atypical angina.[5] Dr. Mindoro filled out a Physician's Request for Services (RFS) for an urgent stress test, which was scheduled for February 25, 2016. Id.

Plaintiff saw Dr. Jerry H. Ginsburg,[6] a cardiologist, at the Salinas-Monterey Heart Institute on February 17, 2016 for an echocardiogram.[7] Id. ¶ 10. The results showed mild or normal functioning of the ventricle and mild backflow of the valves. Id.

On February 24, 2016, Plaintiff was brought to CTF's emergency department on a gurney, complaining of chest wall and abdominal pain. Id. ¶ 11. After Plaintiff was given Almacone,[8] he reported that his pain decreased from a nine out of ten to a two out of ten, and he was returned to his cell. Id. At that point, Dr. Mindoro saw no indication that cardiac medication was necessary. Id.

As scheduled, on February 25, 2016, Plaintiff took a treadmill stress test. Id. ¶ 12. After 73 seconds, he experienced severe chest pain on the left side and had to stop. Id. But his ECG was equivocal. Id.

The following day, Plaintiff reported to Dr. Mindoro that he was experiencing continued chest pain with walking. Id. ¶ 13. Because Dr. Mindoro believed Plaintiff's chest pain needed

---

[5] Atypical angina is the presence of substernal chest pain or discomfort, provoked by exertion or emotional stress and relieved by rest.

[6] Dr. Ginsburg is not a party to this suit.

[7] An echocardiogram tests the action of the heart using ultrasound waves to produce a visual display.

[8] Almacone is a combination medicine used to treat heartburn, acid indigestion, upset stomach, and bloating caused by gas.

3

additional investigation, he put in an urgent RFS for a Lexiscan.[9]

On February 29, 2016, Plaintiff again reported to CTF's emergency department with chest pain and difficulty breathing. Id. ¶ 14. Upon orders by Dr. Yusufzai,[10] Plaintiff was sent to Salinas Valley Medical Hospital's emergency department. Id.

A Lexiscan stress test performed the following day indicated a non-ischemic, or unremarkable, response. Id. ¶ 15. Plaintiff's troponins[11] were negative, and he was discharged back to CTF with no new recommendations regarding his medication management. Id.

On March 3, 2016, Dr. Mindoro again saw Plaintiff and put in an RFS for another echocardiogram to evaluate the progression of his heart disorder. Id. ¶ 16.

On March 17, 2016, Dr. Ginsburg performed the transthoracic echocardiogram that Dr. Mindoro had requested. Id. ¶ 17. The results showed mild left ventricular enlargement with an ejection fraction of 61%, which would not explain Plaintiff's shortness of breath when active. Plaintiff reported no chest pain at this time. Id.

On March 26, 2016, Dr. Mindoro discussed the echocardiogram results with Plaintiff. Id. ¶ 18. Dr. Mindoro considered putting in an RFS for a pulmonary function test. Id. He "had doubts about" a cardiac explanation for Plaintiff's symptoms because the various cardiac function tests he had requested thus far had indicated only mild or normal results. Id. Dr. Mindoro still saw no indication that cardiac medication was necessary. Id.

Dr. Mindoro next saw Plaintiff on April 25, 2016. Id. ¶ 19. Plaintiff reported chest pain upon exertion and walking, but no palpitations or shortness of breath. Id. Concerned about Plaintiff's continued chest pain, Dr. Mindoro put in an RFS for another cardiology consultation and a chest X-ray. Id.

---

[9] A Lexiscan Myocardial Perfusion Imaging test uses a radioactive imaging agent to produce pictures of the heart muscle. The imaging gives off a small amount of radiation that can be seen with a special camera.

[10] Dr. Yusufzai is not a party to this suit.

[11] Troponins are proteins released when the heart muscle has been damaged, which occurs during a heart attack. The extent of damage to the heart correlates with the amount of troponin present in the blood.

4

The chest X-ray conducted at Dr. Mindoro's request on May 4, 2016 showed that Plaintiff's lungs were free of acute infiltrates and appeared normally vascularized. Id. ¶ 20. The cardiomediastinal[12] silhouette was within normal limits. Id. Degenerative changes were present within the thoracic spine, but no acute cardiopulmonary disease was identified. Id. Another cardiology consultation was approved pending scheduling. Id. ¶ 21.

On May 31, 2016, Plaintiff returned from the cardiology consultation and reported to Dr. Mindoro that the cardiologist recommended a coronary angiography.[13] Id. ¶ 22.

On June 9, 2016, Plaintiff told Dr. Mindoro that he had not been experiencing palpitations, but he had symptoms of angina while walking. Id. ¶ 23. Plaintiff described his symptoms as burning pressure over the left side of his chest, precipitated by exercise but relieved by rest. Id.

On June 27, 2016, Plaintiff saw another cardiologist, Dr. Robert Wlodarczyk,[14] who recommended a left heart catherization for an angiogram.[15] Id. ¶ 24.

On July 8, 2016, Plaintiff reported to Dr. Mindoro that he was still experiencing the same symptoms as those he had reported at his last visit a month earlier, lasting less than five minutes each time and relieved by rest. Id. ¶ 25. Dr. Mindoro put in an RFS for the angiogram that Dr. Wlodarczyk had recommended, and an appointment was set for August 9, 2016. Id.

On August 9, 2016, the results of the angiogram showed acute calcified coronary vessels. Id. ¶ 26. Dr. Wlodarczyk immediately requested a cardiothoracic surgery consultation. Id. A quadruple coronary bypass grafting operation was performed that same day by Dr. Reza Khodaverdian and two assistants.[16]

The following day, Dr. Mindoro submitted an RFS for Plaintiff's emergency hospital

---

[12] "Cardiomediastinal" refers to the heart and the vessels of the heart and lungs.

[13] A coronary angiography is a procedure that consists of putting a tube in the arm to access the heart.

[14] Dr. Wlodarczyk was voluntarily dismissed as a defendant in this suit. See supra at 2, n.1.

[15] An angiogram is an X-ray image of blood vessels. The vessels can be seen because a contrast dye within them blocks the X-rays from developing an imaging film.

[16] Neither Dr. Reza Khodaverdian nor the surgical assistants are parties to this suit.

admission for cardiac surgery. Id. ¶ 28.

On August 23, 2016, Plaintiff was discharged from the hospital to CTF's Outpatient Hospital Unit (OHU). Id. ¶ 29. He was prescribed post-cardiac bypass medications of colchicine, Lipitor, a beta-blocker and aspirin. Id. While at OHU, Plaintiff was under the care of Dr. Laurie Hedden.[17]

On October 6, 2016, almost two weeks after Plaintiff had been discharged from OHU, he again saw Dr. Mindoro. Id. ¶ 30. Plaintiff reported that he had occasional palpitations and had to use an incentive spirometer[18] daily because the incision from his surgery was interfering with his deep breathing. Id. Dr. Mindoro ordered tests for iron deficiency anemia, a reticulocyte count, and a follow-up with cardiology. Id.

### B. Administrative Grievance Process

On November 30, 2016, Dr. Mulligan-Pfile and Dr. Palomero denied a grievance that Plaintiff filed against Dr. Mindoro based upon the above sequence of events. Id. ¶ 31. Plaintiff alleged that had Dr. Mindoro and other CTF medical staff properly treated his chest pain, the surgery and resulting discomfort could have been avoided. Id.

On December 16, 2016, Plaintiff filed a Second Level Appeal indicating his dissatisfaction with the earlier denial. Id. ¶ 32. On January 20, 2017, Chief Medical Executive Dr. Posson denied Plaintiff's appeal. Id.

On May 8, 2017, Deputy Director Lewis denied Plaintiff's grievance at the Director's Level, exhausting the administrative remedies available to address his complaint. Id. ¶ 33.

## DISCUSSION

### A. Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The moving party for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine

---

[17] Dr. Hedden is not a party to this suit.

[18] An incentive spirometer is a device used to improve the functioning of the lungs. The patient inhales from the device as slowly and deeply as possible, then holds his breath for two to six seconds.

issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings to demonstrate the existence of a genuine dispute of material fact by "citing to specific parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). A triable dispute of material fact exists only if there is sufficient evidence favoring the nonmoving party to allow a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 249. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249–50.

**B. Analysis**

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). A medical need is serious if failure to treat it will result in "significant injury or the unnecessary and wanton infliction of pain." Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (en banc) (citation and internal quotation marks omitted). A prison official is "deliberately indifferent" to that need if he "knows of and disregards an excessive risk to inmate health." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

A difference of opinion between a prisoner and a physician concerning what medical care is appropriate does not amount to deliberate indifference. Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) overruled on other grounds by Peralta, 744 F.3d 1076; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Even proof that a physician was negligent or committed medical malpractice is insufficient to make out a violation of the Eighth Amendment. Farmer, 511 U.S. at 835–36 & n.4; Toguchi v. Chung, 391 F.3d 1051, 1058, 1060 (9th Cir. 2004). To show deliberate

indifference in violation of the Eighth Amendment, the prisoner-plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Snow, 681 F.3d at 988; Toguchi, 391 F. 3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

In order to prevail on a § 1983 claim for damages against an individual defendant, a prisoner-plaintiff must show that the defendant's deliberate indifference was the "actual and proximate cause" of the deprivation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). The "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused the constitutional deprivation." Id. at 633.

### 1. Medical Treatment

Plaintiff claims that Dr. Mindoro was deliberately indifferent to his serious medical needs by failing to identify and treat his heart condition in a timely manner. But Defendants persuasively argue that Dr. Mindoro is entitled to summary judgment because Plaintiff has not set forth any probative evidence showing that the course of treatment that Dr. Mindoro provided to Plaintiff was medically unacceptable under the circumstances and that Dr. Mindoro chose this course of treatment in conscious disregard of an excessive risk to Plaintiff's health. See Snow, 681 F.3d at 988; Toguchi, 391 F. 3d at 1058.

First, there is no probative evidence in the record showing that Dr. Mindoro's treatment decisions were medically unacceptable under the circumstances. Dr. Mindoro put in five RFS's for various methods to investigate Plaintiff's symptoms, adjusting the urgency and type of each request in response to changes in Plaintiff's health. He also repeatedly sent Plaintiff to cardiac specialists, and he followed the recommendations of specialists regarding Plaintiff's care. Notably, even specialists faced difficulty diagnosing Plaintiff's condition in light of multiple tests that returned mild to normal results. Plaintiff nonetheless argues that Dr. Mindoro should have requested a new EKG upon his arrival to CTF and should not have waited a year between his 2014

and 2015 examinations. But Plaintiff sets forth no evidence that Dr. Mindoro's early treatment decisions were medically unacceptable. There is no evidence that Plaintiff's symptoms were serious enough in 2014 and 2015 to warrant targeted visits before his next physical, for example. Plaintiff also takes issue with Dr. Mindoro's assessment that his palpitations in 2015 were related to anxiety, but he offers no evidence that Dr. Mindoro's assessment of the palpitations was medically unacceptable and it is well established that a mere difference of opinion between a prisoner and a physician concerning what medical care is appropriate does not constitute deliberate indifference. See Snow, 681 F.3d at 987.[19]

Second, there is no probative evidence in the record showing that Dr. Mindoro acted with conscious disregard of an excessive risk to Plaintiff's health. Plaintiff claims that "(Being a medical professional, 'TRAINED IN MEDICAL') such conduct completes the requisite state of mind for a claim of 'deliberate indifference.'" Opp'n at 3. But conscious disregard requires a purposeful act or failure to act on the part of the defendant. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled in part on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc)). There is no evidence whatsoever of any such purposeful act or failure to act here. Nor is there any evidence that Dr. Mindoro ever believed that his elected course of treatment for Plaintiff ever presented an excessive risk to Plaintiff's health. See Toguchi, 391 F.3d at 1051 (summary judgment appropriate where there is no indication that doctor was aware of a risk or believed selected course of treatment presented a serious risk). The record instead shows that Dr. Mindoro provided Plaintiff extensive medical care and that his persistence in exploring Plaintiff's ongoing symptoms ultimately resulted in treatment of a serious heart condition before it proved fatal. Plaintiff's contention that Dr. Mindoro should have done more sooner may be sufficient to state a claim for negligence or

---

[19] Plaintiff asserts that "the rendering of medical services by unqualified personnel is 'deliberate indifference,'" Opp'n at 7 (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1112 (9th Cir. 1986)), and points out that Dr. Mindoro "admits he is not a Cardiologist," id. But unlike the nurses, medical technical assistants and inmate workers in Toussaint, Dr. Mindoro is licensed in family medicine and qualified to perform the initial medical assessments he performed on Plaintiff. Cf. Toussaint, 801 F.2d at 1112. Dr. Mindoro then referred any procedures requiring a specialization in cardiology to cardiac experts and followed their recommendations. There is no evidence that there was any rendering of medical services by unqualified personnel here.

9

medical malpractice in state court, but it is insufficient to make out a violation of the Eighth Amendment under § 1983. See Farmer, 511 U.S. at 835-36 & n.4; Toguchi, 391 F.3d at 1058, 1060.

Dr. Mindoro is entitled to summary judgment as a matter of law on Plaintiff's claim that Dr. Mindoro was deliberately indifferent to Plaintiff's serious medical needs. See Celotex, 477 U.S. at 323. The Court is satisfied that, based on the evidence in the record, no reasonable jury could find that Dr. Mindoro's medical decisions regarding the management of Plaintiff's health constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

### 2. Administrative Grievance Process

Plaintiff claims that Dr. Mulligan-Pfile, Dr. Posson, Dr. Palomero, and Deputy Director Lewis were deliberately indifferent to his serious medical needs by failing to adequately respond to his administrative grievance. But Defendants persuasively argue that Dr. Mulligan-Pfile, Dr. Posson, Dr. Palomero, and Deputy Director Lewis are entitled to summary judgment because there is no evidence that any one of them knew of any issues relating to Plaintiff's heart condition before Plaintiff had heart surgery and filed an administrative grievance alleging that he could have avoided heart surgery had Dr. Mindoro properly treated his chest pain.

The undisputed evidence in the record makes clear that Dr. Mulligan-Pfile, Dr. Posson, Dr. Palomero, and Deputy Director Lewis never personally treated plaintiff's heart condition. Their involvement in the medical care of Plaintiff's heart condition was limited to their review and rejection of Plaintiff's administrative grievance that he could have avoided heart surgery had Dr. Mindoro properly treated his chest pain. And their involvement in the review and rejection of Plaintiff's administrative grievance was not until after Plaintiff had the heart surgery which he now claims could have been avoided. Plaintiff may disagree with the reviewers' rejection of his post-injury administrative grievance, but that's not enough to establish that the reviewers' rejection of his post-injury administrative grievance amounted to deliberate indifference. There is no evidence whatsoever that Dr. Mulligan-Pfile, Dr. Posson, Dr. Palomero, or Deputy Director Lewis "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health" when they reviewed

and rejected Plaintiff's post-injury administrative grievance. <u>Farmer</u>, 511 U.S. at 837.

Dr. Mulligan-Pfile, Dr. Posson, Dr. Palomero, and Deputy Director Lewis are entitled to summary judgment as a matter of law on Plaintiff's claim that they were deliberately indifferent to Plaintiff's serious medical needs. <u>See</u> <u>Celotex</u>, 477 U.S. at 323. The Court is satisfied that, based on the evidence in the record, no reasonable jury could find that Dr. Mulligan-Pfile's, Dr. Posson's, Dr. Palomero's, or Deputy Director Lewis' review and rejection of Plaintiff's administrative grievance constituted deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (ECF No. 28) is GRANTED.

**IT IS SO ORDERED**.

Dated: April 1, 2019

_____

CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California

1
2
3               UNITED STATES DISTRICT COURT
4               NORTHERN DISTRICT OF CALIFORNIA
5

JEROME BORDELON,

        Plaintiff,

v.

MICHAEL MINDORO, et al.,

        Defendants.

Case No. 3:17-cv-05724-CRB

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 1, 2019, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jerome Bordelon ID: F-23499, L-B 249
Correctional Training Facility
P.O. Box 705
Soledad, CA 93960-0705


Dated: April 1, 2019

                Susan Y. Soong
                Clerk, United States District Court

                By:_____
                Lashanda Scott, Deputy Clerk to the
                Honorable CHARLES R. BREYER